**Affirmed and Memorandum Opinion filed August 20, 2024.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-22-00837-CR

---

**KENDRICK MARQUETTE AKINS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1659304**

---

## MEMORANDUM OPINION

A jury found appellant Kendrick Marquette Akins guilty of murder for the death of complainant Dominic Jefferson. Tex. Penal Code Ann. § 19.02(b). The jury found two enhancement paragraphs true and assessed punishment at confinement in the Texas Department of Criminal Justice for life. Tex. Penal Code Ann. §§ 12.32(a), .42(c), 19.02(c). Appellant argues the trial court erred by (1) denying his motion for continuance based on his health and (2) refusing to admit into evidence photographic stills of appellant reenacting with the

investigator his alleged struggle with complainant over the gun that ultimately caused complainant's death. However, appellant did not preserve error with respect to either of those issues.

He also argues (3) he received ineffective assistance of counsel because his trial counsel did not properly prepare his psychologist expert and thus allowed the expert to testify in the punishment phase to her opinion that the "majority of women in this country are killed by — by men who they're in a relationship with." Because the motion-for-new-trial record reflects that appellant's trial counsel did extensively prepare with the psychologist expert and that all three members of the defense trial team provided affidavits reflecting they were surprised by the psychologist's testimony which was not responsive to any question asked, we cannot conclude the trial court erred in denying appellant's motion for new trial.

We affirm the judgment of the trial court as challenged on appeal.

## I.    BACKGROUND

Appellant and complainant were engaged and living together. After appellant received a message on his phone that he would not share with complainant, the two began to fight. Complainant physically threatened appellant with a knife, told appellant to get out and threw his clothes out of the apartment they shared. Dzyre Jones, a friend who frequently stayed at complainant's apartment, was present for the disagreement and testified that appellant remained calm throughout this exchange. After Jones received a message from another friend, who was also staying in complainant's apartment and who needed to be picked up from work, complainant and Jones left the apartment and got in complainant's car.

The car would not start, and complainant began to work on it as it was

common for her car to have problems. Jones ran back to the apartment to grab something she had forgotten and told appellant about the car. Although complainant had not requested his assistance, appellant voluntarily walked out to the parking lot.

Complainant was still angry and attempted to slam the vehicle's hood on appellant's fingers because she did not want his help. She also continued to voice her displeasure with him. At this point, appellant claims that complainant brought a gun with her and pointed it at him, which required appellant to act immediately in self-preservation to get the gun away. In contrast, Jones recalls that appellant pulled a gun out of his pocket and pointed it at complainant, ultimately shooting complainant while she was just a few feet away. Jones also testified that appellant always carried a gun.

After the shooting, it is undisputed that appellant fled the scene. Some hours later, he did turn himself in to the police station.

## II.    ANALYSIS

### A.    Denial of motion for continuance

In issue I, appellant argues the trial court abused its discretion by denying his motion for continuance. The day before trial appellant filed a written motion for continuance. The motion contained a background section which stated that five days earlier appellant was admitted to the hospital after experiencing chest pains, edema, and low circulation. The background also recites that appellant suffers from congestive heart failure. Although the written motion recites these facts, the basis for the continuance in the written motion is the unavailability of appellant's psychologist expert. This witness, who was to testify as to complainant's mental health (relevant to appellant's claim of self-defense), was going to be unavailable

3

due to dental work. Therefore, the written motion sought a continuance of the trial date to secure the appearance of appellant's witness.

On the day of trial, appellant reurged his motion for continuance, but on a new basis—appellant's health concerns:

> Mr. Akins was in the hospital on Thursday of this last week. He didn't get out of the hospital until Saturday, which was October 15th, I believe; and he then was supposed to leave the emergency room and follow up with his PCP doctors. He was on a wrong medication; and right now, they're trying to figure out what the right medication is.
>
> So we would re-urge that. You know, we're otherwise ready but for the fact that he has medical conditions that we believe limit him from being in trial in a stressful situation at this time without his medication being further tested and solidified as being correct at this time.
>
>      . . . .
>
> And so I do have concerns as his lawyer that, you know, if his medical condition continues to worsen, that he may not be able to fully participate in his defense.[1]

### 1. Standard of review and applicable law

A trial court's ruling on a motion for continuance is reviewed for an abuse of discretion. *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007). A trial court does not abuse its discretion as long as its decision is within the zone of reasonable disagreement. *See Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018). But to establish an abuse of discretion, there must be a showing that appellant was actually prejudiced by the denial of his motion. *Gallo*, 239 S.W.3d at 764. "[I]n order to show reversible error predicated on the denial of a pretrial motion for continuance, a defendant must demonstrate both that the trial court

---

[1] After the jury's guilty verdict was announced, appellant fell to the floor and had to be taken to the hospital by ambulance for treatment. Although referenced by appellant in his appellate briefing, this incident does not bear on whether the trial court abused its discretion in ruling on appellant's motion for continuance several days earlier.

erred in denying the motion and that the lack of a continuance harmed him." *Gonzales v. State*, 304 S.W.3d 838, 843 (Tex. Crim. App. 2010); *see also Heiselbetz v. State*, 906 S.W.2d 500, 511 (Tex. Crim. App. 1995) ("To find an abuse of discretion in refusing to grant a motion for continuance, there must be a showing that the defendant was prejudiced by his counsel's inadequate preparation time.").

With regard to continuances, the Code of Criminal Procedure provides: "A criminal action may be continued on the *written motion* of the State or of the defendant, upon sufficient cause shown; which cause shall be fully set forth in the motion." Tex. Code Crim. Proc. Ann. art. 29.03 (emphasis added); *see Anderson v. State*, 301 S.W.3d 276, 278–79 (Tex. Crim. App. 2009), *declined to follow on other grounds*, *Grado v. State*, 445 S.W.3d 736, 741 (Tex. Crim. App. 2014). Article 29.08 of the Code further provides that "[a]ll motions for continuance *must be sworn to* by a person having personal knowledge of the facts relied on for the continuance." Tex. Code Crim. Proc. Ann. art. 29.08 (emphasis added); *see Anderson*, 301 S.W.3d at 279. "Ultimately, an unsworn oral motion preserves nothing for appeal." *Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012) (citing *Anderson*, 301 S.W.3d at 280).

### 2. Preservation

Although appellant filed a written, sworn motion for continuance, the motion did not seek a continuance on the basis that appellant's health precluded his participation in his defense at trial.[2] The written motion also did not express concerns that participation at trial would negatively affect appellant's health. It was

---

[2] We further note that appellant has never taken the position that his health precluded his participation. In fact, appellant's counsel specifically stated that "if his medical condition continues to worsen, that he may not be able to fully participate in his defense."

only orally at the pretrial hearing that appellant sought to continue the trial due to his health. Because that argument was not part of appellant's written, sworn motion, it was not preserved for appellate review.

We overrule issue I.

## B. Exclusion of evidence

In issue II, appellant argues the trial court abused its discretion by refusing to admit defense exhibits 10, 11 and 12 into evidence, which were photographic stills of appellant reenacting with the police investigator his alleged struggle with complainant over the gun.

Appellant argues that the photographs should have been admitted because they were not a substitute for verbal expression and did not constitute hearsay. In response, the State argued that appellant failed to preserve the complaint and that the photographs constituted inadmissible hearsay. Because appellant did not intend to testify, the State further asserted that the photographs would allow appellant to describe his struggle with complainant without affording the State cross-examination.

### 1. Standard of review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). Before we may overrule a trial court's evidentiary decision, we must hold that the trial court's ruling was so clearly wrong as to lie outside the zone within which reasonable people might disagree. *See id*. Generally, an appellate court will affirm the trial court's ruling if it is correct under any theory of law applicable to the case. *See State v. Esparza*, 413 S.W.3d 81, 88–90 (Tex. Crim. App. 2013).

Furthermore, this court may not reverse a judgment of conviction without

6

first addressing an issue of error preservation. *See Darcy v. State*, 488 S.W.3d 325, 327–28 (Tex. Crim. App. 2016). To preserve error regarding the exclusion of evidence, in addition to articulating to the trial court why evidence should be admitted, a party must make an offer of proof describing the excluded evidence unless its substance is apparent from the context. *See* Tex. R. Evid. 103(a)(2); *see also Golliday v. State*, 560 S.W.3d 664, 668–69 (Tex. Crim. App. 2018). The purposes of an offer of proof are to enable the appellate court to determine whether the exclusion was erroneous and harmful, and to allow the trial court to reconsider its ruling in light of the actual evidence. *Mays v. State*, 285 S.W.3d 884, 890 (Tex. Crim. App. 2009).

### 2. Preservation

Although appellant argues the trial court abused its discretion in excluding the photographs, the State argues that appellant did not properly inform the court of the substance of the proffer. The State further argues there was no testimonial context for the photographs and that the investigator did not establish that the gestures in the photographs were made in conjunction with statements, as opposed to in lieu of verbal statements.

The investigator testified that appellant "was telling [him] what happened" and that the two of them "acted it out." The investigator confirmed that the excluded photographs correctly depicted moments in time during the interview of appellant. Exhibit 10 shows one man standing in front of another pointing a cell phone at the other. In exhibit 11, one man is visible holding the cellphone and the other man's arm is on the first man's arm with the cellphone perpendicular to the two men. In exhibit 12, only one man is visible along with the arm of the other. Although their hands are touching, it is unclear what this image is intended to reflect. The investigator testified as to the identities of the two men in the

photographs.

However, appellant did not provide the context necessary to evaluate the proffer. It is not clear whether appellant was playing the part of himself in the photographs, and we cannot speculate. It is also unclear whether the photographs are meant to show a reenactment of the shooting, or whether they are intended to show another earlier scene such as the dispute over appellant's cell phone and messages, or when complainant threatened appellant with a knife. There was undisputed testimony that before the shooting complainant had threatened appellant with a knife and was carrying the knife inside the apartment. There was also testimony that complainant grabbed one of appellant's phones and attempted to break it. We cannot assume, without more, which interaction the photographs are designed to show. There is also no testimony explaining whether the gestures shown in the photographs were part of a verbal explanation or whether they were intended to be a substitute for a verbal explanation. *See Foster v. State*, 779 S.W.2d 845, 862 (Tex. Crim. App. 1989) (conduct may be substitute for verbal expression if "a declarant is asked a specific question and responds assertively to that question in a non-verbal manner."); *Hearne v. State*, No. 14-14-00501-CR, 2015 WL 4930910, at *2 (Tex. App.—Houston [14th Dist.] Aug. 18, 2015, no pet.) ("Because the gestures were being made along with the complainants' verbal statements about what appellant did to them, we cannot say that the gestures were intended as a substitute for verbal expression.").

Therefore, we conclude that appellant did not preserve error on this issue and overrule issue II.

## C.    Claim of ineffective assistance of counsel

In issue III, appellant argues he received ineffective assistance of counsel because his counsel was not properly prepared for the testimony of defense

8

witness, psychologist Dr. Victoria Sloan. In the punishment phase, appellant's trial counsel asked Dr. Sloan why interpersonal violence was complex. After a lengthy explanation of research, Dr. Sloan testified about the potential results of a relationship between two people who both have violent backgrounds and histories:

> If you have two people who have violent backgrounds, violent histories, and you put them together in a relationship, you're going to have a lot of explosions. Okay?

> The majority of women in this country are killed by — by men who they're in a relationship with. You know, that statistic alone ought to tell us that we have to do something different here if we're going to stop these kinds of killing in this country. We have to look at the complexity of this issue and stop pretending it's this black-and-white simple issue to look at.

Appellant asserts that his counsel should have gone over the questions she intended to ask of the expert before trial and her failure to do so was a deficient performance. In response, the State argues that appellant's trial counsel was not deficient but, even if there was deficient performance, appellant was not harmed.

### 1. Applicable law

To establish that trial counsel rendered ineffective assistance, appellant must demonstrate, by a preponderance of the evidence, that (1) his counsel's performance was deficient and (2) there is a reasonable probability that the result of the proceeding would have been different but for his counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Perez v. State*, 310 S.W.3d 890, 892–93 (Tex. Crim. App. 2010). Appellant's failure to make either of the required showings of deficient performance and sufficient prejudice defeats the claim of ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003); *see also Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland*

test negates a court's need to consider the other prong.").

Appellant must first show that his counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The second prong of *Strickland* requires the appellant to demonstrate prejudice—"a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694.

We indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and, therefore, the appellant must overcome the presumption that the challenged action constituted "sound trial strategy." *Strickland*, 466 U.S. at 689; *Williams*, 301 S.W.3d at 687. Our review is highly deferential to counsel, and we do not speculate regarding counsel's trial strategy. *See Bone v. State*, 77 S.W.3d 828, 833, 835 (Tex. Crim. App. 2002). To prevail on an ineffective assistance claim, the appellant must provide an appellate record that affirmatively demonstrates that counsel's performance was not based on sound strategy. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *see Thompson*, 9 S.W.3d at 813 (holding that record must affirmatively demonstrate alleged ineffectiveness). Because the reasonableness of trial counsel's choices often involves facts that do not appear in the appellate record, the court of criminal appeals has stated that trial counsel should ordinarily be given an opportunity to explain his actions before a court reviews the record and concludes that counsel was ineffective. *See Rylander*, 101 S.W.3d at 111; *Bone*, 77 S.W.3d at 836.

10

## 2.    Standard of review

Appellant made his claim of ineffective assistance of counsel in a motion for new trial. A defendant may move for a new trial based on ineffective assistance of counsel. *See Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993). When an appellant presents his ineffective assistance claim to the trial court in a motion for new trial, an appellate court analyzes that claim as a challenge to the denial of the motion for new trial. *See Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004) (holding appropriate standard of review for ineffective-assistance claim brought forth in motion for new trial is abuse of discretion), *superseded by statute on other grounds as stated in State v. Herndon*, 215 S.W.3d 901, 905 n.5 (Tex. Crim. App. 2007); *see also Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012), *overruled on other grounds by Miller v. State*, 548 S.W.3d 497 (Tex. Crim. App. 2018).

We review a trial court's grant or denial of a motion for new trial for an abuse of discretion. *State v. Gutierrez*, 541 S.W.3d 91, 97–98 (Tex. Crim. App. 2017). The trial court is the exclusive judge of the credibility of the evidence presented at the motion for new trial hearing. *Najar v. State*, 618 S.W.3d 366, 371 (Tex. Crim. App. 2021). We also defer to the trial court's credibility choices and presume that all reasonable fact findings in support of the ruling have been made. *State v. Thomas*, 428 S.W.3d 99, 104 (Tex. Crim. App. 2014). We will reverse the trial court's ruling only if it "is arbitrary or unsupported by any reasonable view of the evidence." *Najar*, 618 S.W.3d at 372.

## 3.    Evidence before the trial court

The trial court held a hearing on appellant's motion for new trial. Although no live testimony was received, all three members of appellant's defense team submitted affidavits at the request of the trial court, responding to specific

questions identified by the trial court as relevant to appellant's claim of ineffective assistance of counsel.

The attorney who conducted Dr. Sloan's direct examination, Jacquelyn Carpenter, explained in her affidavit that she had worked with Dr. Sloan in other cases before appellant's trial. Carpenter also explained that Dr. Sloan testified in a hearing outside the presence of the jury as to the basis of her expert opinion, thereby previewing her testimony. In this hearing, Dr. Sloan did not mention her concerns about the societal issue of women being killed by men with whom they are in a relationship.

Carpenter further stated in her affidavit that she never discussed domestic violence with Dr. Sloan because Dr. Sloan's testimony was not intended to touch on domestic violence or anything other than mental-health issues. The affidavits from the other two attorneys described multiple meetings with Dr. Sloan, meetings that included, on at least one occasion, appellant's presence. The defense team had lengthy conversations with Dr. Sloan and felt that her testimony about complainant's mental health was important to establish appellant's defense. All three members of the defense team were surprised by Dr. Sloan's comment. All three explained that her comment never came up during preparation sessions and was not pertinent to the testimony sought from Dr. Sloan.

The transcript from trial reflects that Carpenter did not ask anything specific to which Dr. Sloan's comment was responsive. Further, the defense team did not draw undue to attention to Dr. Sloan's comment, and Carpenter followed up Dr. Sloan's comment with questions to clarify that her comment was a general comment, and not tied to any facts in the case. Dr. Sloan also explicitly testified that she had no opinion how the shooting occurred, or who was holding the gun.

Dr. Sloan testified to complainant's mental-health diagnoses and her "high

propensity for violence." Therefore, Dr. Sloan's testimony did aid appellant's defense and his theory of the case—that he did not intend to kill complainant. Appellant does not dispute that Dr. Sloan's testimony was otherwise helpful to his case or part of an effective trial strategy. Restated, appellant's challenge is that his defense counsel should have done more to guarantee that Dr. Sloan would not offer an unexpected opinion. Specifically, appellant suggests that Carpenter did not properly rehearse all the questions that she intended to ask Dr. Sloan.

Based on the record before the trial court at the motion-for-new-trial hearing, there was uncontroverted evidence the trial team had prepared and considered Dr. Sloan's testimony. There was uncontroverted evidence before the trial court that Dr. Sloan testified as part of appellant's trial strategy to establish the shooting was unintended. We cannot say that the trial court abused its discretion in concluding that neither Carpenter, nor any member of the defense team, were deficient in their performance because appellant's expert voiced an unexpected opinion.

We overrule issue III.

### III.   CONCLUSION

Having overruled appellant's three issues, we affirm the judgment of the trial court as challenged on appeal.


/s/     Charles A. Spain
         Justice

Panel consists of Justices Wise, Spain, and Hassan.

Do Not Publish —Tex. R. App. P. 47.2(b).